And we'll have the argument next in S.P. Che Investments, LLC v. Collector's Coffee, 21-2070. Good morning, Your Honors. Good morning, Your Honors. Jimmy Yardwan on behalf of Collector's Coffee, Inc. There's no time for rebuttal. Correct, Your Honor. And I don't know that I'll even take all the time allotted unless there's a lot of questions for the panel. This is in my ears. Well, and to be forthcoming there. It's because it's so simple. It may be. So here's the thing. I am the second lawyer coming in on this thing. These are not my briefs, so I get the pleasure of arguing somebody else's briefs today. One thing in going through everything last night that I discovered that had not been brought to this panel's attention that I think may bring some – I think it definitely will bear some relevance on your decision is the fact that my client, as the Court is aware, this case involves the ownership right issues of the Jackie Robinson contracts as an intervener action to an SEC action against my client and its CEO. In April of this year, after all the briefing was done, the Jackie Robinson Foundation actually brought a cross-claim against Collector's Coffee. I don't know that that fact was brought to this Court's attention. I can't find where the record was supplemented to let the Court know that, in fact, now CCI – It was ascertainable. Okay. Yes. We can see the district court document. Gotcha. I just wanted to make sure that that was clear. So CCI, unlike what is argued in the briefs, is now a party to Count 2. I don't think there's really any issue with the stay on Count 1, as everybody kind of concedes that it's properly been applied. I do think, though, there is some bearing on the subject matter jurisdiction argument still, even in light of the fact that CCI is a party. I do not think that the issues in the intervener action are similar and of a common nucleus of fact to the SEC action. As we laid out in the brief, or as my predecessors laid out in the brief, I think the court – the district court and the magistrate – If we disagree with you on just that point. Sure. Then what? If you disagree with me on the subject – On the common nucleus of operative facts point. Then I think I lose. Yes. Okay. So that's really it. Pretty simple. I mean, I think that the SEC action does not really – the ownership issue of the contracts is not at issue in the SEC action. The SEC has basically said these are CCI-owned contracts. The question is who has the different interests in it. So I don't think the issue of who owns the Jackie Robertson contract – And you agree that there doesn't have to be a perfect overlap between the two? I would concede that, yes. I don't think there has to be a perfect overlap, but I do think this sets forth kind of a messy situation. That's why you're in court. What I can say is it looks as though the ownership issues will not be tried at the same time as the SEC case. As it stands right now, there's no order that says both the intervener action and the SEC action will be tried at the same time. So if there's some sort of finding that the Jackie Robinson Foundation does have an ownership interest, but the SEC action says, no, CCI owns it, I mean, let's assume that my client loses the SEC action and the SEC comes in and gets a judgment and then gets a trustee appointed, which, as I was talking with my opposing counsel, it's kind of shocking that a trustee wasn't appointed to this point. I mean, the trustee is going to come in and say, that's an asset of CCI. Our job is to go in and try to monetize it. It's a total aside, but why do you say it's shocking? Huh? Why do you say that it's a total aside, but given my background, why do you say it's shocking that a trustee was not appointed? Because every other SEC case that I've been involved in like this, Your Honor, a trustee has been appointed at the outset. Really? Yes. It's kind of odd that I actually am hired to represent the corporation. I frankly, I'm not saying that it doesn't happen. My personal experience is that in these types of actions, a trustee is appointed to represent the corporation in these actions and go out and find the assets that are available to then distribute to investors like Mr. Schoenfeld's clients. So, you know, at the end of the day, I do think there is, and knowing what, that there doesn't have to be perfect overlap, but I do think it is a little bit cumbersome for my client to have to defend ownership issues that really aren't even at issue in the main case. And so I do think that there is a viable argument that the subject matter jurisdiction doesn't apply here and that the intervener action should be dismissed. What's happening with the arbitration? So as far as I know, and again, I've just kind of substituted into this whole thing, there's really nothing going on with the arbitration at this point. What's being litigated right now is the Jackie Robinson Foundation claims, and we've had depositions on those. And then we will have 10 days from now, November 7th through November 9th, we're scheduled for a preliminary injunction hearing with the SEC action. In response to Judge Loehr, you said if we disagree with you on subject matter jurisdiction, you lose. You're not separately maintaining the argument that count two should be stayed? I think there's an argument that it should be stayed. I don't know that it's a real strong argument. It's a subsidiary argument. Yeah, I'm not sure it's a real strong argument, but I do think that there is an argument to be made that it should be stayed, given the fact that clearly in the SEC case, the SEC is saying we own this thing. So why should we have to litigate that issue if it's not even going to be an issue in the SEC case and take all the time and expense of litigating an ownership issue that may be moot one way or the other? I mean, it doesn't – I don't see a harm in staying the underlying issue, because if the SEC wins, they're going to have to deal with it. That's not the standard. I understand. That's why it's a subsidiary issue. Yes. Okay. But if my client wins, then the litigation can resume. All right. So that's why I see it as kind of that issue. Thank you. You're welcome. Thank you very much. We'll hear from your friend on the other side. You can also feel free to be as brief as you would like. I might be a little longer. Okay. Thank you. May it please the Honorable Court, Richard Schoenfeld, appearing for the appellee's SDJ investments, abode investments, and the Sievertson Family Trust, who I will refer to as the intervener plaintiffs, and the district court referred to as the holders. So Collectors Coffee, which I will refer to as CCI, has raised two issues in this appeal. The first issue is that the district court erred in declining to stay the second cause of action, which is a cause of action only between the intervener plaintiffs and the Jackie Robinson Foundation over clear title to the – Hasn't that just been changed? In fact, isn't CCI part of that litigation? CCI is now part of the cross-claim as a result of the May 18, 2022, order of the district court allowing Jackie Robinson Foundation to amend and assert a claim against CCI related to the title over the contracts. And the significance of that is it really does render the stay issue moot because CCI had maintained that although not a party to the second cause of action, it should be stayed because they wanted to have, quote, a seat at the table, end quote. Both the magistrate judge and the district court repeatedly advised CCI that if they truly wanted a seat at the table, they had remedies available. Specifically, Judge Marrero referenced Rule 24A, Subsection 2, where they could have sought to intervene. But what is made clear in the opening brief at page 24 of CCI is they never really wanted their seat at the table. Instead, they wanted to have my clients, the intervener plaintiffs, add them as a defendant to the title issue over the contract so they could then compel originally the Dodgers, now the Jackie Robinson Foundation. When you use the word moot, there's legal significance that attaches to that term. Do you really mean moot or do you mean that it's a reason to deny, to reject their argument? Correct. It would be a reason to reject their argument. And I think I said effectively moot is really what it would boil down to, that their argument is no longer a valid argument. They effectively abandoned it a moment ago. Correct. Very true. So I think that it's clear that CCI had their ability to intervene. Had they not had a seat at the table, now they have a seat at the table. And what's significant here is that CCI has misplaced focus on FAA Rule 3  meaning that the second cause of action should or shouldn't be stayed. And really, Rule 3 of FAA applies when parties to an arbitration agreement are being subject to arbitration. Because the second cause of action at the time of the briefing did not involve CCI, it was actually an act of discretion. The FAA could not mandate the court to compel arbitration to non-parties to the arbitration agreement. And instead, when we take a look at the case law, for example, and also World Chrisa Corporation, it's really clear that it is an act of discretion under the inherent authority of the district court to manage its docket in determining whether it would be judicially efficient to proceed with Count 2 or should it be stayed for purposes of judicial economy. And the district court found that it would not be efficient to stay the second cause of action, which was an act of discretion. I would also note that in the World Chrisa case, it's clear that it is the burden of the moving party seeking the stay to justify that stay. And the district court found, both the magistrate judge and the district court found, there wasn't even an attempt to justify why the second cause of action should have been stayed, and it was, therefore, appropriately denied. When we get one last thing. So the appellant has cited Hines v. Overstock, again, for the notion, in this case, claiming this should be a de novo review. But Hines v. Overstock was when parties to an arbitration agreement where FAA Rule 3 did apply were denied a stay, it would be a de novo review. Here, as I've already stated, under World Chrisa, as well as Ginesco, this was an act of discretion under the inherent authority of the court. There is no mandatory stay required. So, really, this should be reviewed for abuse of discretion, which does not exist. When we get to the subject matter jurisdiction issue, it boils down to, as the court has noted, whether there's a common nucleus of operative facts between the intervener complaint and the SEC complaint. And I would like to note that I think where the confusion lies in terms of CCI's position is that the court is permitted and required to consider even the stayed cause of action that is subject to an arbitration agreement because an arbitration agreement does not divest the court of subject matter jurisdiction. Instead, it is an informed selection clause. And when we look at the cases of Mitsubishi Motors v. Solar, Grazzi v. Colorado Tech, and Benkelman v. Baseline, it makes it clear that even if a cause of action is subject to an arbitration agreement, it does not change the analysis in terms of whether or not there's supplemental jurisdiction. And what the court in Benkelman said is, the fact that the parties have contractually agreed to resolve any particular dispute at arbitration says nothing about whether that dispute would satisfy federal question, diversity, or any other basis of subject matter jurisdiction. So we look at the complaints, both the SEC complaint and the intervener complaint, in total. We don't disregard the first cause of action that has been stayed as a result of the arbitration agreements. And when we look at the overlap in the two cases, it becomes crystal clear that the district court did not err in finding subject matter jurisdiction. The SEC's case is an enforcement case over securities fraud allegations. And one of the main allegations is that CCI, after having secured $6 million in investment funds from my clients, executing Series A notes and Series B notes, which are referenced in the SEC complaint, then went out and represented that these contracts were owned 100 percent by CCI and omitted and failed to disclose that my clients, in fact, had a secured perfected interest in the contracts that would require that payment go to them before any investors. And when we look then at the intervener's first amended complaint, we have alleged that very same thing. We have specific paragraphs that outline each and every Series A and Series B notes. We have alleged that my clients have a secured perfected interest in the contracts and that my clients are entitled, therefore, to receive proceeds from the contracts to satisfy those loans. So inherent in both cases is that it is going to be required that proof of my client's ownership interest in the contracts be established. The SEC has to establish that my clients had, in fact, loaned the $6 million, had the Series A and Series B notes, and have a lien on the contracts in order for CCI and Mr. Contile's statements to have been materially false or for him to have been omitted. That's a central part of the SEC. Central part of both cases. And that's why the Court was correct in finding that there was a common nucleus of operative facts. And the Court did note that CCI likes to focus on the differences between the two lawsuits, but that's not the analysis. The analysis is whether or not there is, in fact, a commonality between the two cases. And in this instance, there is, and the district court correctly found so. Unless there's other questions, I will submit it on the briefs. Thank you very much. Thank you. We'll reserve the decision.